# CASE NO. 25-1318

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRITTANY RUFFIN, individually and as Personal Representative for the Estate of J.R.,

Plaintiff-Appellee

v.

KEVIN DAVIS,

Defendant-Appellant

and

WILLIAM HOLBROOK, individually; CITY OF COLUMBIA POLICE DEPARTMENT; CITY OF COLUMBIA,

Defendants.

ON APPEAL FROM
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CARLINA

# OPENING BRIEF OF APPELLANT

SUBMITTED BY:

John S. Nichols
Bluestein Thompson Sullivan, LLC
Post Office Box 7965
Columbia, South Carolina 29202
(803) 779-7599
john@bluesteinattorneys.com

Mary Daniel LaFave
LaFave Bagley, LLC
2019 Park Street
Columbia, South Carolina 29201
(803) 726-6756
mary@lafavebagley.com


Counsel for Appellant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................... ii

I.    JURISDICTIONAL STATEMENT......................................................1

II.   STATEMENT OF ISSUE PRESENTED FOR REVIEW .............................2

III.  STATEMENT OF CASE.....................................................................3

IV.   SUMMARY OF ARGUMENT. .......................................................6

V.    ARGUMENT. ...................................................................................7

CONCLUSION. ........................................................................................25

STATEMENT REGARDING ORAL ARGUMENT. ............................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Aleman v. City of Charlotte*, 80 F.4th 264 (4th Cir. 2023)..................................... 14

*Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001). .......................................... 20, 21

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011).......24

*Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)................... 14

*Belton v. Loveridge*, 129 F.4th 271 (4th Cir. 2025) ................................. 7, 8, 14, 15

*Benton v. Layton*, Op. No. 23-1680 (4th Cir. filed June 3, 2025)
    2025 WL 1560371……………………………………7, 14, 15, 20, 21, 22, 23, 24, 25

*Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002)................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548,
    91 L.Ed.2d 265 (1986) ................................................................................. 7

*City of Tahlequah v. Bond*, 595 U.S. 9, 142 S. Ct. 9, 211 L.Ed.2d 170 (2021). .......24

*Clem v. Corbeau*, 284 F.3d 543 (4th Cir. 2002)............................................... 15, 22

*Dempsey v. Bucknell University*, 834 F.4th 457 (3rd Cir. 2016). ...........................17

*Doe v. Univ. of North Carolina System*, 133 F.4th 305 (4th Cir. 2025). ...............1, 2

*District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577,
    199 L.Ed.2d 453 (2018) ....................................................................... 15, 24

*Elliott v. Leavitt*, 99 F.3d 640 (4th Cir. 1996)................................................. 15, 20

*Franklin v. City of Charlotte*, 64 F.4th 519, 531 (4th Cir. 2023)...................... 19, 21

ii

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865,
104 L.Ed.2d 443 (1989) ................................................................*passim*

*Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011) ......................................14

*Hensley ex rel. N. Carolina v. Price*, 876 F.3d 573 (4th Cir. 2017). .......................21

*Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020)......................................7

*Knibbs v. Momphard*, 30 F.4th 200 (4th Cir. 2022)................................... 19, 21, 22

*Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466,
192 L.Ed.2d 416 (2015) ................................................................19

*Lewis v. Caraballo*, 98 F.4th 521 (4th Cir. 2024) ................................................ 19, 23

*Malbrough v. Stelly*, 814 F. App'x 798 (5th Cir. 2020)............................................19

*McLenagan v. Karnes*, 27 F.3d 1002 (4th Cir. 1994). ................................................14

*Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985).........1, 2

*Momphard v. Knibbs*, ―― U.S. ――, 143 S. Ct. 303, 214 L.Ed.2d 133 (2022). ....19

*Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 193 L.Ed.2d 255 (2015). .................23

*Nazario v Gutierrez*, 103 F.4th 213 (4th Cir. 2024).................................... 16, 17, 23

*Patel v. City of Madison, Ala.*, 959 F.3d 1330 (11th Cir. 2020). ...................... 16, 22

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). .........4

*Pauly v. White*, 874 F.3d 1197 (10th Cir. 2017). ....................................................19

*Rambert v. City of Greenville*, 107 F.4th 388 (4th Cir. 2024). ..............................1, 2

*Rice v. Morehouse*, 989 F.3d 1112 (9th Cir. 2021)...................................................19

iii

*Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001). ................................................13

*Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991). ......................................................20

*Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015). .............................................................. 16

*Swinford v. Santos*, 121 F.4th 179 (11th Cir. 2024). ........................................... 16, 22

*Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985). ...............15

*Thomas v. City of Columbus, Ohio*, 854 F.3d 361 (6th Cir. 2017). .........................21

*Thornton v. City of Columbus*, 727 F. App'x 829 (6th Cir. 2018). .................... 21, 22

*Williams v. Strickland*, 917 F.3d 763 (4th Cir. 2019). ......................................... 1, 7

**Statutes**                                                                                                **Page**

28 U.S.C. § 1331 ...................................................................................................... 1

28 U.S.C. § 1343 ...................................................................................................... 1

28 U.S.C. § 1291 .......................................................................................................1

42 U.S.C. § 1983 ............................................................................................... 1, 2, 3

City of Columbia Ord. § 10-36 ................................................................................18

S.C. Code Ann. § 16-21-90 (2003). ........................................................................ 17

S.C. Code Ann. § 16-23-20 (2015). ........................................................................ 17

S.C. Code Ann. § 16-23-30 (2015). ........................................................................ 17

S.C. Code Ann. § 16-23-410 (2015). .......................................................................18

S.C. Code Ann. § 16-23-420 (2015). ...................................................................... 17

iv

**Rules**                                                                   **Page**

Fed.R.App.P. 4(a)(1)(A)............................................................................... 1

Fed. R. Civ. P. 56(a). ................................................................................. 7

**Other Authorities**                                                     **Page**

Governor McMaster's COVID-19 Executive Order 2020-21 ............................ 8, 18

v

## JURISDICTIONAL STATEMENT

### A.    Basis for the District Court's Jurisdiction

Plaintiff Brittany Ruffin brought this action individually and on behalf of the estate of her son, J.R., against Defendant Davis, a police officer, and others pursuant to 42 U.S.C. § 1983. The District Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### B.    Basis for the Court of Appeals' Jurisdiction

Defendant Davis, a police officer, raised the defense of qualified immunity by motion for summary judgment. The collateral order doctrine provides a basis for appellate jurisdiction over orders refusing to dismiss Section 1983 claims against officials claiming qualified immunity from suit. *E.g., Doe v. Univ. of North Carolina System*, 133 F.4th 305 (4th Cir. 2025); *Rambert v. City of Greenville*, 107 F.4th 388 (4th Cir. 2024); *Williams v. Strickland*, 917 F.3d 763 (4th Cir. 2019). This Court has jurisdiction under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985) (a district court's denial of qualified immunity is an appealable "final decision" under 28 U.S.C. § 1291 "to the extent that [the decision] turns on an issue of law").

### C.    Filing Dates Establishing Timeliness of the Appeal

The District Court filed its order on February 27, 2025 (JA364).

Appellant filed and served his Notice of Appeal on March 26, 2025. (JA382). This appeal is timely pursuant to Fed.R.App.P. 4(a)(1)(A).

**D.     Assertion Regarding Jurisdiction Despite a Lack of Finality**

An interlocutory order denying a public official's claim of qualified immunity is an immediately appealable order under the collateral order doctrine. *Doe v. Univ. of North Carolina System*; *Rambert v. City of Greenville*; *Mitchell v. Forsyth.*

### STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Did the District Court err in denying Defendant Davis's motion for summary judgment on the grounds of qualified immunity in response to Plaintiff's claims under 42 U.S.C. § 1983 arising out of the shooting death of Plaintiff's decedent by Davis, a police officer, in the line of duty?

**STATEMENT OF THE CASE**

This case arises out of a police shooting. Appellant Kevin Davis, an officer with the City of Columbia, South Carolina, police department, shot and killed decedent, J.R., on April 8, 2020.

On April 7, 2023, Appellee Brittany Ruffin, individually and as personal representative of J.R.'s estate, filed a complaint in the United States District Court against Officer Davis, police chief William Holbrook, the City of Columbia, and the City's police department. Appellee stated claims under 42 U.S.C. § 1983 for improper search and seizure, excessive force, deprivation of due process, deliberate indifference, and violation of J.R.'s rights under the Fifth Amendment of the United States Constitution. Appellee sought actual and punitive damages.

Appellant Davis filed an Answer to the Complaint on May 11, 2023. Davis raised numerous defenses including qualified immunity. (JA029) (Answer, pp. 15-16, ¶ 107; p. 17, ¶ 112; p. 18, ¶¶ 120, 121). Appellant filed an amended answer on May 30, 2023, again raising qualified immunity.  (JA049) (Amended Answer, p. 16, ¶ 107; p. 17, ¶ 112; pp. 18-19, ¶¶ 120, 121).

Appellee entered a stipulation of dismissal without prejudice of Defendant Holbrook in his official capacity and the City of Columbia Police Department on June 1, 2023.

3

On June 28, 2024, Appellant Davis filed a Motion for Summary Judgment. Appellant filed an amended Memorandum in support of his motion on July 1, 2024. (JA069). Appellant asserted entitlement to qualified immunity. *See*, *e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). (JA072).

On July 15, 2024, Appellee Ruffin filed a memorandum in opposition to Appellant's Motion for Summary Judgment. (JA208). Appellee asserted the existence of material questions of fact so as to preclude summary judgment. Appellee also moved to strike Appellant's Amended Motion for Summary Judgment as well as several attached exhibits. (JA199).

On August 5, 2024, Appellant filed his Reply to Appellee's memorandum in opposition. (JA233). On August 7, 2024, Appellant responded to Appellee's Motion to Strike. (JA242).

On December 10, 2024, the Magistrate Judge issued his report and recommendation. (JA307). The Magistrate Judge recommended the District Court deny the Motion to Strike as well as Appellant's Motion for Summary Judgment based upon qualified immunity.

On January 8, 2025, Appellant filed Objections to the Report and Recommendation regarding the denial of Appellant's Motion for Summary Judgment. (JA333). On January 22, 2025, Appellee filed a Reply to Appellant's

Objections. (JA358).

On February 27, 2025, the District Court entered its order adopting the Magistrate Judge's Report and Recommendation in full. (JA364).

Appellant filed and served his Notice of Appeal on March 26, 2025. (JA382).

## SUMMARY OF ARGUMENT

The District Court erred in failing to grant Appellant Davis's Motion for Summary Judgment based upon qualified immunity. It is undisputed that the decedent, J.R., ignored multiple police commands, continually evaded arrest, and possessed a firearm which he placed in his hand as he crouched down and faced Appellant. Under these undisputed facts, Appellant Davis could reasonably believe J.R. posed an imminent danger to Appellant or others so that his action in shooting J.R. was lawful. He was, therefore, entitled to qualified immunity under the test articulated in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.ed2d 443 (1989), its progeny, and controlling authority in the Fourth Circuit.

## ARGUMENT

## STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(a). If the officer demonstrates that there is no genuine issue as to any material fact and he or she is entitled to judgment as a matter of law then it is appropriate for the Court to award the officer summary judgment. *Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020).

This Court reviews de novo a District Court's decisions on motions for summary judgment and qualified immunity. *Benton v. Layton*, Op. No. 23-1680 (4th Cir. filed June 3, 2025), 2025 WL 1560371. The Court takes the facts as the District Court gives them to this Court, and viewing those facts in the light most favorable to the plaintiff (Appellee), answering the question: Is the defendant (Appellant) still entitled to qualified immunity? *Williams v. Strickland*, 917 F.3d 763 (4th Cir. 2019). *See also Belton v. Loveridge*, 129 F.4th 271 (4th Cir. 2025) (this Court has jurisdiction to review the denial of qualified immunity to the extent the decision turns on questions of law). The Court must determine at a particularized level what constitutional or statutory right Appellant violated and whether that right was clearly

7

established at the time of his conduct; both are questions of law, not fact. *Belton*.

## FACTS

On April 6, 2020, during the height of the COVID-19 pandemic, Governor Henry McMaster had issued an Executive Order requiring all South Carolina citizens to shelter in place and setting a curfew of 6:00 p.m. See JA106 ("Stay at Home or Work" Executive Order No. 2020-21). The Order authorized "any and all law enforcement officers of the State, or any political subdivision thereof, to do whatever may be deemed necessary ... to enforce the provisions of [the] Order..." JA106, Section 2(B), at p. 7. The Order took effect on April 7, 2020, at 5:00 p.m. *Id.,* Section 1(B) at p. 6.

On April 8, 2020, at approximately 6:00 p.m., Appellant Kevin Davis, a police officer with the City of Columbia's Police Department, received a text message from Dylan Gunnels, who was president of the Seminary Ridge Neighborhood Association, that individuals were riding bicycles and looking into automobiles near Eau Claire High School in the neighborhood. (JA119); (JA098 - Davis's SLED statement); (JA168 - SLED Investigative Report). Davis was aware of property crimes in the area by juveniles in recent days. (JA098)

Davis was in uniform, drove his marked patrol vehicle, and carried his duty firearm. (JA098). Following Mr. Gunnels' text message Davis responded to the area and observed decedent, J.R., walking on the street. (JA098). Davis observed J.R. step behind a house and reappear with a bag (there is a factual dispute over whether J.R. possessed the bag the entire time). (JA098). Davis approached J.R. but J.R. walked away from him. (JA098). Davis then exited his patrol car and attempted to speak with J.R., but J.R. took off running and Davis ran after him.

During the foot chase Davis commanded J.R. multiple times to "stop running." (JA127; JA098 at p. 6). Davis observed J.R. reaching for his waistband which Davis believed was J.R.'s attempt to retrieve a weapon. Davis then saw J.R. stop, crouch down, and reach towards his leg. Davis believed J.R. was attempting to gain full control of the weapon which had fallen from J.R.'s waistband as he ran. As Davis unholstered his service weapon Davis commanded J.R. to "get on the ground," "let me see your hands," and "show me your hands." Instead of complying, J.R. turned towards Davis, who began to fire his service weapon.

J.R. took off running again and once again took cover behind a bush or near the school building. Davis observed J.R. turn to face him again so Davis fired several shots. One of the shots struck J.R. in the head and killed him. The entire encounter lasted 42 seconds.

Officer Davis gave a statement to SLED in which he described the encounter:

> I do not recall the exact details of what occurred after I saw the suspect crouch down. But to the best of my knowledge my next recollection after that point was hearing gunshots, and seeing the suspect running perpendicular of my location west alongside the side of Eau Claire High School. I observed the suspect to have possession of a black pistol in his hand, I was in fear for my life. I believe I gave the suspect commands to drop his gun at this point, although I am unsure of the exact timing of these commands, and it happened so quickly I am unsure if I was able to actually give them.
>
> I observed the suspect turn his head towards me in, in what I believed was an attempt to turn his body towards me and raise his firearm (black pistol with brown handle) to be at a position to fire towards me, fearing for my life and to defend myself from great bodily injury or death, I gained my sight picture of my pistol and fired approximately four (4) shots towards the suspect. I then observed the suspect fall to the ground, and I could see one wound to the front of the suspect's forehead.

(JA098 at 7).

J.R. was pronounced deceased shortly thereafter. (JA164). A firearm was located next to J.R.'s right hand. (JA166 at 2). Video and DNA evidence establishes without dispute that J.R. was carrying the firearm. (JA127); (JA189). Davis thought that J.R.'s weapon had been fired but there is no physical evidence that it had been fired – this was determined only after the fact. (JA069 at 2-18).

The events were recorded on both Davis's body worn camera (BWC) and a camera on top of nearby Eau Claire High School (ECHS). JA071. JA127 and

10

JA150). See also still shots at JA128 (BWC still shots) and JA151 (ECHS still shots). The videos and the still shots are in the record.

## THE DISTRICT COURT'S ORDER

The District Court noted that "the record establishe[d] three undisputed facts: (1) J.R. possessed a firearm; (2) J.R. ignored Davis's repeated commands to stop running, get on the ground, and show his hands; and (3) J.R. turned to face Davis in the final moments of the chase, as shown by the impact of Davis's round." ECF No. 86, p. 7. The Court noted a "key factual dispute" over whether J.R. actually pointed his firearm at Officer Davis, and as to why J.R. turned to face Officer Davis. *Id.* at 7-8. The Court concluded, "[h]ere, while it is undisputed that J.R. turned his head, there is no *undisputed evidence* that he made a furtive or threatening movement with the weapon." (*Id.* at 8) (emphasis by the court).

The District Court also found a dispute on whether there was actually a shot that Officer Davis could have heard, as he reported, and on the number of shots he

11

actually fired versus what he reported he fired. ECF No. 86, p. 11. The Court agreed with the Magistrate Judge that Officer Davis's statement was "'ambiguous beyond the moment Davis says he saw J.R. crouch' and further agrees that, at the summary judgment stage, ambiguities like this must be resolved in Plaintiff's favor." (JA374).

Next, the District Court agreed with the Magistrate Judge "that the evidence concerning J.R.'s movements at the relevant moment is also ambiguous and must be resolved in Plaintiff's favor." (JA375). The District Court held that in all of this Court's precedent, "suspects made explicit threatening movements" and "there is no undisputed evidence that J.R. did so." (JA375).

The District Court also rejected Office Davis's argument that the Magistrate Judge improperly relied upon hindsight rather than evaluating the situation from the perspective of an objectively reasonable officer on the scene. (JA376). The Court agreed with Officer Davis "to the extent the undisputed evidence shows that J.R. ran from Davis, was armed, ignored commands to stop, and turned his face to the officer." (JA376). The District Court agreed with the Magistrate Judge, however, that a reasonable jury could conclude "that a reasonable officer in Davis's place would not have believed J.R. to pose an immediate threat to his safety. Rather, a reasonable jury could conclude that J.R.

12

was attempting to evade arrest by flight and was shot in so doing." (JA376).

The District Court also rejected Officer Davis's argument that the still shots from the relevant camera footage indicated "furtive movements" when viewed in a light most favorable to Plaintiff. JA387-JA378). The Court added, "[t]he Fourth Circuit has held 'simply being armed is insufficient to justify deadly force.'" (JA380).

The District Court concluded "[b]ecause the key facts remain disputed, and because case law establishes that officers may not use deadly force absent an immediate threat, the magistrate judge correctly denied qualified immunity." (JA380-JA381). The District Court therefore adopted the Magistrate Judge's report and recommendation and denied Officer Davis's motion for summary judgment based upon qualified immunity.

## APPLICABLE LAW

Claims for unlawful seizure of property or person should be analyzed as a violation of the Fourth Amendment. *Rogers v. Pendleton*, 249 F.3d 279 (4th Cir. 2001); *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002). Although Appellant Davis seized decedent J.R. when he shot him:

[T]he key question is whether that seizure was unreasonable. A court would have to resolve whether the officer's use of deadly force was objectively unreasonable in the particular circumstances that [the officer] faced. This "reasonableness" test "is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), but turns on "the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Moreover, a court assessing reasonableness must not substitute its judgment for "the split-second judgment of a trained police officer," even if the officer's judgment ends up being mistaken. [*McLenagan v. Karnes*, 27 F.3d 1002, 1007-08 (4th Cir. 1994)]. Instead, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer" in the same uncertain and rapidly evolving circumstances. *Aleman v. City of Charlotte*, 80 F.4th 264, 285 (4th Cir. 2023) (cleaned up).

*Belton*, at 278-279.

Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe their actions were lawful. *Henry v. Purnell*, 652 F.3d 524 (4th Cir. 2011). *See also Benton v. Layton*, Op. No. 23-1680 (4th Cir. filed June 3, 2025), 2025 WL 1560371 (qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). It protects all but the plainly incompetent or those who knowingly violate the law. *Benton v. Layton*. Whether a police officer is entitled to qualified immunity requires a two-prong analysis:

(1) Did the officer violate a constitutional or statutory right? and

14

(2) Was the right clearly established at the time the officer acted?

*Benton v. Layton*; *Belton v. Loveridge*, 129 F.4th 271, 277 (4th Cir. 2025), *citing*

*District of Columbia v. Wesby*, 583 U.S. 48, 62–63, 138 S. Ct. 577, 199 L.Ed.2d

453 (2018).

## A. The Constitutional Prong

Regarding the constitutional prong, this Court explained:

> * * * While the Fourth Amendment does protect against unreasonable seizures, it is not unreasonable for a police officer to "use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985)). And this "calculus of reasonableness must embody  allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –  about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The test is, at bottom, one of  objective reasonableness, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396, 109 S.Ct. 1865.

*Belton v. Loveridge*, at 277-278. *See also Clem v. Corbeau*, 284 F.3d 543, 550 (4th

Cir. 2002) ("Recognizing that 'police officers are often forced to make split-second

judgments – in circumstances that are tense, uncertain, and rapidly evolving'– we

take care to consider the facts from the perspective of a reasonable officer on the

scene, and avoid judging the officer's conduct with the '20/20 vision of hindsight'"),

*citing Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).

15

*Accord Swinford v. Santos*, 121 F.4th 179, 189-190 (11th Cir. 2024) (the Court must be careful not to "Monday-morning quarterback" the reasonableness of the officer's use of force), citing *Patel v. City of Madison, Ala.*, 959 F.3d 1330 (11th Cir. 2020).

Applying this "objective reasonableness" standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (citing *Graham*). There are four factors central to this inquiry in the Fourth Circuit:

(1) The severity of the crime at issue;

(2) Whether the suspect posed an immediate threat to the safety of the officers or others;

(3) Whether the suspect was actively resisting arrest or attempting to evade arrest by flight; and

(4) The extent of the plaintiff's injuries.

*Nazario v Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024). Ultimately, the overarching inquiry is whether the force that was used was proportional under the circumstances. *Id.*, citing *Ray*.

16

### 1.     *Graham* Factor One

The first *Graham* factor addresses the severity of the crime. Here, Officer Davis was responding to a report of teenagers on bicycles looking into cars and was aware of several property crimes in the area. This was also during a time when Governor McMaster's COVID-19 curfew was in place. While these facts may weigh against using significant force, J.R. subsequently fled and visibly possessed a firearm, which posed a sufficient risk of danger to either the public or Officer Davis to weigh in his favor. *Nazario*. An objectively reasonable police officer would have had probable cause to investigate the following: (a) tampering with an automobile in violation of S.C. Code Ann. § 16-21-90 (2003) (a misdemeanor); (b) unlawful carrying of a handgun, S.C. Code Ann. § 16-23-20 (2015) (a felony); (c) possession of a firearm on school property, S.C. Code Ann. § 16-23-420 (A) (2015) (a felony); (d) brandishing, displaying, or threatening others with a firearm on school property, Section 16-23-420 (B) (a felony); (e) possession of a firearm by someone under 18 years of age, S.C. Code Ann. § 16-23-30 (B) (2015) (a felony); (f) presenting or pointing a firearm at another person, S.C. Code Ann. § 16-23-410 (2015) (a felony); (g) failing to stop for a police command, City of Columbia Ord. § 10-36[1]; and (h) violating the curfew in Governor McMaster's COVID Pandemic Executive Order 2020-21.[2] *See*, *e.g.*, *Dempsey v. Bucknell University*, 834 F.4th 457, 469-470 (3rd

Cir. 2016) ("in reviewing probable cause determinations made by law enforcement, the role of courts is not that of the much-maligned 'Monday-morning quarterback' whose critiques are made possible only by the benefits of hindsight").

J.R. was in a crouching position, had turned his head towards Officer Davis, and held a handgun, which he had possessed in the open on school property. These facts provided sufficient probable cause that J.R. was committing serious offenses endangering Officer Davis and the community. This factor weighs in favor of Officer Davis.

---

[1] This ordinance provides "It shall be unlawful for any person in the city to willfully and knowingly fail or refuse to stop when signaled, hailed or commanded to stop by a police officer or other officer of the city." See https://library.municode.com/sc/columbia/codes/code_of_ordinances?nodeId=COOR_CH10LAEN

[2] The Governor's Executive Order is at https://governor.sc.gov/sites/governor/files/Documents/Executive-Orders/2020-04-06%20eFILED%20Executive%20Order%20No.%202020-21%20-%20Stay%20at%20Home%20or%20Work%20Order.pdf. The Order provided "I hereby authorize any and all law enforcement officers of the State, or any political subdivision thereof, to do whatever may be deemed necessary to maintain peace and good order during the State of Emergency and to enforce the provisions of this Order and any prior or future Orders issued by the undersigned in connection with the present State of Emergency." Order, Section 2, p. 11.

### 2.    *Graham* Factor Two

The second *Graham* factor – immediate threat to officers – also weighs in Officer Davis's favor. In fact, "among the considerations under *Graham*, the most important factor is the second factor – whether the suspect posed an immediate threat to others." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024), *citing Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021); *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017) (holding the second factor "is undoubtedly the most important" ); *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (same). This is an objective inquiry judged from the "perspective of a reasonable officer  on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S. Ct. 2466, 2473, 192 L.Ed.2d 416 (2015).

As this Court stated recently:

> * * * "Distilling general guiding principles from Fourth Circuit excessive force precedent is well-nigh impossible. There is nothing generic about the scenarios that lead a police officer to shoot another person." [*Franklin v. City of Charlotte*, 64 F.4th 519, 531 (4th Cir. 2023))]. "When the [c]ourt has discerned an objective basis for lethal force, the case involved 'a person in possession of, or suspected to be in possession of, a weapon' who does not 'obey commands' and instead 'makes some sort of furtive or other threatening movement with the weapon.'" *Id.* (quoting *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022), cert denied *Momphard v. Knibbs*, –– U.S. ––, 143 S. Ct. 303, 214 L.Ed.2d 133 (2022) (mem.)).

*Benton v. Layton*, slip at *5.

The Court in *Benton* surveyed its "furtive movement" cases in finding qualified immunity protected the police officers in that case. *Benton* v. Layton, slip at *6-7, discussing *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991) (plaintiff turned his upper body towards the officer with his left hand not fully visible but "partially closed around an object" and the officer shot the plaintiff; there was no gun); *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (an officer stopped the plaintiff and placed him in the front passenger seat of his police vehicle with the window up; when speaking with another officer by the police vehicle, the first officer "noticed a movement and looked to find [the plaintiff] with his finger on the trigger of a small handgun pointed at" both officers; the officers shot the plaintiff after the first officer gave a clear command to drop the weapon); *Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (officer received a report from "a mall patron that a man appeared to have a gun under his sweater, pointing to the plaintiff; the officer "perceived a bulge consistent with the shape of a gun," the plaintiff disregarded an order to put his hands up, then "lower[ed] his hands in the direction of the bulge," and the officer shot him; there was no gun). The Court added:

> * * * In sum, the court has consistently found that excessive

20

force was justified where officers reasonably feared they were in imminent danger due to sudden movements that followed verbal commands. Plaintiff views these cases as requiring both an immediate sense of danger and "prior indication that ... [a suspect] might be armed" ... as they involve officers either seeing a gun or being in areas or situations where they were primed to believe there were guns. *See id.* at 21–22, 136 S. Ct. 305. But there is no requirement in the Supreme Court's or this circuit's jurisprudence for officers to have prior knowledge of or suspicion that a suspect has a weapon—the inquiry is whether "a police officer 'has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others.'" *Franklin*, 64 F.4th at 531.

Whether there was a gun in Hill's hand or not, Layton gave six clear commands that Hill disobeyed, and Hill then made movements in direct violation of those commands. Defendants could have reasonably perceived that Hill had a gun due to the "character of the situation [being] transformed" *See Knibbs*, 30 F.4th at 220. Our "focus ... [is] on [Hill's] furtive movements after readily recognizable law enforcement officers ordered [him] to" put his hands out the window, stop moving, and drop a gun. *See Knibbs*, 30 F.4th at 221; *id.* at 222 (quoting *Anderson*, 247 F.3d at 131) ("[A]n officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action."); *see also Hensley ex rel. N. Carolina v. Price*, 876 F.3d 573, 585 (4th Cir. 2017) ("If an officer directs a suspect to stop ... [and] show his hands ... the suspect's continued movement likely will raise in the officer's mind objectively grave and serious suspicions about the suspect's intentions.").

*Benton v Layton*, slip at \*6. *See also Thornton v. City of Columbus*, 727 F. App'x

829, 838 (6th Cir. 2018) ("The Officers did not have to wait for Thornton to raise

his weapon before employing deadly force.") (citing *Anderson v. Russell*); *Thomas*

*v. City of Columbus, Ohio*, 854 F.3d 361, 366-67 (6th Cir. 2017) (holding that an

21

officer reasonably used deadly force when an individual ran at him with a firearm at his side); *Thornton*, 727 F. App'x at 837 (holding that an officer's use of deadly force was reasonable when a suspect had a shotgun not pointed at the officers).

Here, it is undisputed that Officer Davis gave J.R. seven separate commands to "stop running," "get on the ground," "let me see your hands, and "show me your hands." Despite these clear commands J.R. continued to flee, placed a handgun visibly in his right hand, crouched behind a bush, and looked in Officer Davis's direction. Officer Davis did not have to wait until J.R. pointed the gun at him before he was entitled to take action. *Benton v. Layton*, citing *Knibbs. See also* (the Court should not engage in "Monday-morning quarterbacking" of the split second decisions an officer must make). *Clem v. Corbeau*; *Graham v. Connor*; *Swinford v. Santos*; *Patel v. City of Madison, Ala*. This *Graham* factor weighs in Officer Davis's favor.

### 3. *Graham* Factor Three

The third *Graham* factor – resisting arrest or evading arrest by flight – also weighs in Officer Davis's favor. J.R. ran and disobeyed clear commands from Officer Davis to "stop running," "get on the ground," "let me see your hands, and "show me your hands." Although J.R. stopped running, it was only to crouch, with

22

full control of the gun in hand, to look at Officer Davis.

This *Graham* factor weighs in Officer Davis's favor.

### 4.    *Nazario* Factor Four

In *Nazario*, this Court stated that in the Fourth Circuit, the Court considers a fourth factor – "the extent of the plaintiff's injuries." *Nazario v. Gutierrez*, 103 F.4th at 234. As noted, J.R.'s injuries were fatal. This factor weighs in J.R.'s favor.

As this Court found in *Benton*, all three *Graham* factors weigh in Officer Davis's favor. While the fourth factor described in *Nazario* weighs in J.R.'s favor, the Court reviews the factors cumulatively, and places the most emphasis on the second *Graham* factor - immediate threat to officers. *Lewis v. Carabello*. Under that view, Officer Davis is entitled to qualified immunity under the constitutional prong of the analysis.

### B.    The "Clearly Established Right" Factor

Once again, this Court's recent decision in *Benton v. Layton* is instructive. There, the Court stated:

> In assessing the clearly established prong, "[w]e ... [are] not require[d] [to find] a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." [*Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 193 L.Ed.2d 255 (2015)] (quoting *Ashcroft v. al– Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011)).

23

The Supreme Court has instructed "not to define clearly established law at too high a level of generality ....................... [T]he 'rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted.""" *City of Tahlequah v. Bond*, 595 U.S. 9, 12, 142 S.Ct. 9, 211 L.Ed.2d 170 (2021) (quoting [*District of Columbia v. Wesby*, 583 U. S. 48, 63, 138 S. Ct. 577, 199 L.Ed.2d 453 (2018)]).

*Benton v. Layton*, slip at \*7. The Court then observed "the 'furtive movement' cases hold that officers may deploy lethal force when, after issuing clear commands, they reasonably perceive a suspect to be an immediate danger because of movements in violation of those commands." *Benton v. Layton*, slip at \*7.

In this case, Officer Davis objectively perceived an immediate danger when J.R. failed to follow his clear commands, was visibly holding a handgun firmly in his control, crouched down and turned his head towards Officer Davis. This Court should find that Officer Davis is independently entitled to qualified immunity under the "clearly established right" prong.

24

## CONCLUSION

The facts of this case are tragic, as were the facts in *Benton v. Layton*. However, as in *Benton*, the only question before the Court is whether Officer Davis is entitled to qualified immunity under the precedent of this Court and the Supreme Court of the United States. As set forth above, under the precedent of both Courts the answer is "yes."

For the reasons stated this Court should reverse the District Court's order denying summary judgment as to Appellant's claim to qualified immunity. The Court should remand for entry of judgment in accordance with this Court's decision.

Respectfully submitted,

John S. Nichols
Bluestein Thompson Sullivan, LLC
Post Office Box 7965
Columbia, South Carolina 29202
(803) 779-7599
john@bluesteinattorneys.com

Mary Daniel LaFave
LaFave Bagley, LLC
2019 Park Street
Columbia, South Carolina 29201
(803) 726-6756
mary@lafavebagley.com

Attorneys for Appellant

25

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Kevin Davis respectfully requests oral argument and submits that such argument will aid this Court in deciding the issues presented in this appeal.

SUBMITTED BY:

John S. Nichols
Bluestein Thompson Sullivan, LLC
Post Office Box 7965
Columbia, South Carolina 29202
(803) 779-7599
john@bluesteinattorneys.com

Mary Daniel LaFave, Esquire
LaFave Bagley, LLC
2019 Park Street
Columbia, South Carolina 29201
(803) 726-6756
mary@lafavebagley.com

Counsel for Appellant